Filed 1/21/25  P. v. Dalton CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>TREVER RICHARD DALTON,<br><br>   Defendant and Appellant. | 2d Crim. No. B327308<br>(Super. Ct. No. 2017042577)<br>(Ventura County) |

Trever Richard Dalton shot and injured his neighbor following an altercation.  After waiving jury, the trial court found appellant guilty of assault with a firearm (Pen. Code, § 245, subd. (a)(2))[1] and found true the special allegations that he personally inflicted great bodily injury and used a firearm during the commission of the offense (§§ 12022.7, 12022.5, subd. (d)).

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

He contends (1) his conviction should be reversed because his jury trial waiver was invalid, and (2) the matter should be remanded for the trial court to consider his eligibility for mental health diversion pursuant to the amended version of section 1001.36.  The People contend a limited remand is appropriate in light of Senate Bill No. 1223's (2021-2022 Reg. Sess.) amendments to the eligibility requirements of the statute.  (Stats. 2022, ch. 735.)

We agree remand is appropriate so the trial court may consider appellant's application for mental health diversion pursuant to amended section 1001.36.  The judgment is otherwise affirmed.

*Facts and Procedural History*

On December 5, 2017, appellant, a California Highway Patrol officer for 11 years, was off duty and spent the day drinking alcohol.  He purchased a 30 pack of beer and drank seven or eight beers.  He also stopped at two restaurants and had a few more drinks.  At one of the restaurants, he struck up a conversation with a man whose father was purportedly a member of the Hells Angels Motorcycle Club.  Appellant, who was struggling with post-traumatic stress disorder (PTSD), major depressive disorder, paranoia, and a hypervigilant mindset, thought the man might be "watching" him.  Later that night, appellant decided to ride his bicycle to a neighbor's house, a former member of the Hells Angels.  He brought with him a few beers and his firearm.

Around midnight, Sorin Popescu was preparing to evacuate his family due to the Thomas Fire, which had caused a blackout in the neighborhood.  When Popescu saw appellant, dressed all in black, standing near his neighbor's front door, he became

2

suspicious.  Popescu did not know appellant and thought he might be a burglar.  After a brief altercation with Popescu, appellant rode away on his bicycle.  Minutes later, Popescu heard a "loud boom" that sounded like a gunshot.  He ducked, heard a "second shot," and felt the impact of a bullet hit his back.  He turned and saw appellant behind his car.  Popescu and his wife rushed inside the house and called 911.

Appellant was arrested and charged.  Prior to trial, he moved for a grant of pretrial mental health diversion (§ 1001.36).  The prosecution opposed the motion, and the trial court denied it.

In October 2022, appellant waived his right to a jury trial.  The trial court found him guilty as charged, suspended imposition of sentence, and placed him on three years formal probation.

*Waiver of Right to Jury Trial*

Appellant contends his jury trial waiver was not valid because the trial court did not advise him that (1) a jury would be selected from members of the community, and (2) he could participate in the selection of the jury with defense counsel.  He also contends his jury waiver is invalid because the trial court should have informed him of recent statutory changes to Code of Civil Procedure, section 231.7, including the prohibition against racial and other forms of discrimination in the jury selection process.  We are not persuaded.

On October 10, 2022, appellant waived his right to jury.  The following colloquy occurred:

"[Court]: On the Trever Dalton Matter. . . . Both sides are announcing ready for trial, three to four days, but I believe it's going to be a court trial; correct?

3

"[Defense Counsel]: Yes. The parties have agreed on court trial. Mr. Dalton is prepared to waive jury, your Honor.

"[Court]: Mr. Dalton, you do have the right to a jury trial. Do you waive your right to a jury trial, sir?

"[Appellant]: Yes, your Honor.

"[Court]: And what that means is the People would have to call witnesses and a jury would sit and judge their credibility, and the twelve jurors would be the trier of fact. They would have to be convinced beyond a reasonable doubt, all twelve of them unanimously, that the People have proven the charges and special allegations beyond a reasonable doubt. Do you understand that?

"[Appellant]: Yes, your Honor.

"[Court]: And you waive that right and instead of having a jury make that decision, it's going to be a judge. Do you understand that, and do you agree to that?

"[Appellant]: Yes, sir.

"[Court]: And you also understand if you were to have a jury trial, you would have a Fifth Amendment right to remain silent at trial and also at a trial on the special allegations, the right to remain silent, and the jury would be told that they couldn't hold that against you. Do you understand that?

"[Appellant]: I do now.

"[Court]: And you still have your Fifth Amendment right to remain silent, but instead of jury, it would be the judge who will be trying the case, and they would also have to follow the same rule. They couldn't use that against you. Do you understand that?

"[Appellant]: I do.

"[Court]: All right. And I think I got it as to both the count and the special allegation. [¶] Any additional questioning you want . . . ?

"[Prosecution]: I'll just do this: Mr. Dalton, basically the difference between a jury trial and a court trial is that in a jury trial and a court trial, both are a contested case, and both sides would advocate for their respective positions. In a jury trial the People have to convince all twelve jurors beyond a reasonable doubt. In a court trial, the People have to convince one judge beyond a reasonable doubt. Do you understand that?

"[Appellant]: I do.

"[Prosecution]: Understanding that, are you willing to give up your right to a jury trial and agree to do a court trial?

"[Appellant]: Yes.

"[Court]: All right. I'm satisfied. [¶] You're in agreement . . . ?

5

"[Defense Counsel]: I am, your honor. For the record, of course, I've discussed this issue.

"[Court]: With your client?

"[Defense Counsel]: Right.

[Court]: Then I'm going to show Mr. Dalton has knowingly, intelligently and understandingly waived his right to a jury trial and has chosen instead to proceed with a court trial . . . .

"[Prosecution]: I will add for the record that the People are also waiving jury.

"[Court]: All right. . . ."

*Analysis*

"Under the federal Constitution and our state Constitution, a defendant in a criminal prosecution has a right to a jury trial. [Citations.]  However, a 'jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel.'" (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166 (*Sivongxxay*), quoting Cal. Const., art. I, § 16.)  A defendant's waiver of the right to jury trial must be knowing and intelligent—meaning, it must be made with an understanding of the nature of the right being abandoned and the consequences of the decision to abandon it—as well as voluntary. (*Ibid.*)

Whether the defendant has made a knowing, intelligent, and voluntary waiver of the right to jury trial "'must depend upon the unique circumstances of each case.'" (*Sivongxxay, supra,* 3

6

Cal.5th. at p. 166.)  "We uphold the validity of a jury waiver "'if the record *affirmatively* shows that it is voluntary and intelligent under the totality of the circumstances.'"" (*People v. Daniels* (2017) 3 Cal.5th 961, 991 (lead opn. of Cuéllar, J.) (*Daniels*).)

In *Sivongxxay*, our Supreme Court "offer[ed] some general guidance" and "recommend[ed] that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Sivongxxay*, *supra*, 3 Cal.5th. at p. 169.)

Here, appellant was informed that he had the right to trial by jury, the jury would be comprised of 12 people who had to unanimously agree in order to render a verdict, if he waived his right to a jury trial, a judge alone would decide his guilt or innocence, a jury would assess the credibility of witnesses and judge the People's substantive charges and special allegations by the "beyond a reasonable doubt" standard, and appellant maintained a Fifth Amendment right to remain silent during both a jury or bench trial.

Appellant's contention that his jury waiver was invalid because the trial court did not advise him the jurors would be selected "from the community" or that he could participate in that selection with counsel, overlooks our high court's admonition that *Sivongxxay*'s guidelines are not mandatory.  Indeed, there is no "rigid formula or particular form of words that a trial court must use in taking a jury waiver." (*Sivongxxay*, *supra*, 3 Cal.5th.

at pp. 169-170; see also *People v. Morelos* (2022) 13 Cal.5th 722, 753-754.)

Moreover, appellant was represented by counsel who indicated that he discussed jury waiver with appellant, and when asked, appellant repeatedly indicated he understood his right to a jury trial and wished to waive that right. Nothing in the record supports the proposition that he did not understand the nature and possible consequence of his action in waiving jury. To be sure, "[c]ourts generally rely on counsel to transmit to defendants critical information about whether to waive the jury trial right and the consequences of waiving it . . . ." (*Daniels, supra,* 3 Cal.5th at p. 999 (lead opn. of Cuéllar, J.).)

In view of this well-settled precedent, we also reject appellant's contention that the trial court was required to inform him of recent changes to the jury selection process pursuant to Code of Civil Procedure section 231.7.

Based on the totality of the circumstances, we conclude appellant's jury waiver was knowing, intelligent, and voluntary.

*Mental Health Diversion*

Appellant contends the matter should be remanded to determine whether he is eligible for mental health diversion under amended section 1001.36. Respondent agrees remand is appropriate.

In January 2020, the trial court denied appellant's pretrial application for mental health diversion. The trial court explained that although it was "satisfied" appellant suffered from PTSD, it was "not satisfied" that the "nexus between the diagnosis was . . . a sufficient cause of the actual shooting incident." The trial court reasoned that appellant's PTSD "did make him become a person who abused alcohol," and "there are a lot of people who drink lots of alcohol and they don't shoot people, even if they're suffering

8

from some sort of a traumatic situation.  [¶]  So on the basis of the nexus, the application for mental health diversion is denied."

*Analysis*

We review the trial court's denial of mental health diversion for an abuse of discretion.  (*People v. Moine* (2021) 62 Cal.App.5th 440, 448-449.)  "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard . . . ."  (*Id.* at p. 449.)

In 2018, the legislature enacted section 1001.36, which created a pretrial diversion program for certain persons with qualifying mental health disorders.  (*People v. Frahs* (2020) 9 Cal.5th 618, 626 (*Frahs*).)  At the time of appellant's application for diversion, the trial court had discretion to grant the motion if it found all of the following criteria: (1) the defendant suffers from a qualifying mental disorder; (2) the disorder was a significant factor in the commission of the charged offense; (3) the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment; (4) the defendant consents to diversion and waives his or her right to a speedy trial; (5) the defendant agrees to comply with treatment as a condition of diversion; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community.  (Former § 1001.36, subd. (b)(1)(A)-(F).)

The Legislature subsequently amended section 1001.36 to "'simplify the procedural process for obtaining diversion by presuming that a defendant's diagnosed "mental disorder" has a connection to their offense.'"  (*People v. Doran* (2023) 95

9

Cal.App.5th 1, 8, citing Assem. Com. On Pub. Safety, Rep. on Sen. Bill No. 1223; Stats. 2022, ch. 735, § 1.)[2]

As amended, section 1001.36 now provides that when making the initial decision on eligibility, "If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).)

This new presumption broadens the ameliorative effects of the statute and applies retroactively to appellant's nonfinal judgment. Accordingly, remand is appropriate. (*Frahs*, *supra*, 9 Cal.5th at pp. 624, 631; see also *Doran*, *supra*, 95 Cal.App.5th at pp. 6-7, 10.)

However, diversion is not mandatory, even if appellant makes a prima facie showing that he satisfies the eligibility requirements. The decision to grant or deny diversion rests in the sound discretion of the trial court. (§ 1001.36, subd. (a); see *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 888.) We express no view concerning the ultimate outcome of appellant's application.

*Disposition*

We reverse the trial court's order denying appellant's motion for mental health diversion and remand the matter with directions that the trial court conduct a new hearing to consider appellant's application for mental health diversion pursuant to

---

[2] The statute has been amended since Senate Bill 1223, but those amendments do not affect our analysis.

10

amended section 1001.36.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

CODY, J.

11

Derek D. Malan, Judge
Superior Court County of Ventura

_____

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Shezad H. Thakor, Deputy Attorney General, for Plaintiff and Respondent.